JUSTICE TRIEWEILER
dissenting.
I dissent from the majority opinion.
In 1974, Paul Woods was acquitted of the charge against him by reason of mental disease or defect and committed to the Montana State Hospital. Section 46-14-303, MCA, provides that a committed person may apply to the district court for release, and that if he does so, the procedure to be followed is that which is set forth at § 46-14-302, MCA.
Section 46-14-302, MCA, provides that after an application for release is made, the court shall appoint at least one person, who is a psychiatrist or psychologist, to examine the person who applies for release and the committed person has a right to an evaluation by a similarly qualified person of his or her choice. If the court is satisfied from the reports that the applicant no longer suffers from a mental disease or defect that causes that person to present a substantial risk of bodily injury, the court shall order the person’s discharge. If it is not so satisfied, it must hold a hearing at which the State has the burden of proving by clear and convincing evidence
whether the person may safely be discharged or released on the grounds that the person no longer suffers from a mental disease or defect that causes the person to present a substantial risk of:
(i) serious bodily injury or death to the person or others;
(ii) an imminent threat of physical injury to the person or others;
or
(iii) substantial property damage.
Section 46-14-302(6)(a), MCA.
Woods applied for release on December 22,1994. In support of his application, he attached the report from Ardean Moore, the staff psychiatrist at Montana State Hospital at Warm Springs. The report is dated December 2, 1993. In the report, she observed that:
Although he uses denial regarding his sexual offenses, he has remained in control of his impulses and has not demonstrated any serious behavioral problems or lapses in judgment and has been able to participate adequately in his treatment plan.
Moore diagnosed “Pedophilia, in Remission” and concluded that:
*58 He does not present a substantial risk or serious threat of serious bodily injury or death to himself or others. He does not present a substantial risk of substantial property damage.
Recommendations: Since Mr. Woods is not seriously mentally ill and has not shown dangerousness for some time, he qualifies for consideration for discharge. At the time of his mental status assessment in October, 1993, he appeared stable and appeared to have reached maximum hospital benefits from a lengthy hospitalization.
The District Court appointed Timothy J. Casey, Ph.D., to evaluate Woods. He did so and issued a report to the court dated January 18, 1995. Dr. Casey also diagnosed pedophilia in remission, but concluded that Woods was not a suitable candidate for release from the hospital because he had no support system within the community. Significantly, however, neither did he make any finding that Woods suffered from a mental disease or defect which caused him to present a substantial risk of harm to himself or others.
Remission is defined in the 25th Edition of Dorland’s Illustrated Medical Dictionary as “a diminution or abatement of the symptoms of a disease; also the period during which such diminution occurs.” Dorland’s Illustrated Medical Dictionary 1343 (25th ed. 1974).
The District Court held a hearing to consider Woods’ application for release on February 17, 1995. The only medical evidence presented was the aforementioned reports from Moore and Casey. In spite of this lack of evidence, the District Court found that:
13. Woods’ mental disorder(s), disease(s) or defect(s) cause him to present a substantial risk of serious bodily injury, or an imminent threat of physical injury to other persons, particularly young children.
For that reason, the District Court denied Woods’ application for release from the Montana State Hospital.
Woods appealed the District Court’s denial of his application to this Court for the reason that the District Court’s critical finding was unsupported by substantial evidence and, therefore, was clearly erroneous. This Court, after review of the record, apparently agreed. On December 12, 1995, the majority issued an order in which it retained jurisdiction but remanded to the District Court for further proceedings. In that order, the majority concluded as follows:
We conclude that neither report addresses the fundamental requirement of § 46-14-302, MCA (1993), that the defendant “no longer suffer[s] from a mental disease or defect,” and that, accord *59 ingly, the District Court was without any factual or legal basis on which to determine whether the requirements of this statute had been met.
... [N]either professional person has rendered an opinion on the fundamental requirement of the statute at issue — whether Woods suffers from a mental disease or defect in the context of § 46-14-302, MCA (1993). Under such circumstances, we conclude that the District Court was in no position to determine whether the requirements of § 46-14-302, MCA (1993), were met.
As pointed out by Woods, the statutory framework for consideration of his application for release does not provide for sequential hearings. It provides, in § 46-14-302, MCA, that he is entitled to a hearing at which the State has the burden of proving that he suffers from a mental disease or defect which makes him dangerous to himself or others. If the State does not carry its burden, he is entitled to be released. Section 46-14-302(6)(b), MCA, clearly provides:
A hearing is considered a civil proceeding, and the burden is upon the state to prove by clear and convincing evidence that the person may not be safely discharged or released because the person continues to suffer from a mental disease or defect that causes the person to present a substantial risk of:
(i) serious bodily injury or death to the person or others;
(ii) an imminent threat of physical injury to the person or others;
or
(iii) substantial property damage.
(Emphasis added.)
The State had the opportunity to meet its burden on February 17, 1995, but failed to do so. This Court agreed that the State failed to do so and, accordingly, decided the merits of Woods’ appeal by its order dated December 12, 1995. There is no precedent in a case where the issue is whether the district court’s judgment is supported by substantial evidence for concluding that it is not and then simply remanding to the district court while retaining jurisdiction so that the unsuccessful party can take another shot at it.
I agree with the majority that principles of res judicata and law of the case should apply to our decision. See State v. Smith (1993), 261 Mont. 419, 863 P.2d 1000; State v. Black (1990), 245 Mont. 39, 798 P.2d 530; State v. Van Dyken (1990), 242 Mont. 415, 791 P.2d 1350. However, I disagree with the majority’s determination of what the *60 law of the case is. I conclude that the law of the case is the majority’s decision on December 12,1995, that the State had not proven by clear and convincing evidence that Woods suffered from a mental disease or defect which made him a danger to himself or others.
Although there is no precedent for the procedure followed by the majority in this case, the real danger is that this case becomes precedent for any party who similarly needs a second shot at proving his or her case in the future.
Just think about it. Based on this decision, in every appeal where the losing party raises insufficiency of the evidence as the basis for appeal, and where that argument has merit, if this Court does not like the result, the prevailing party should have the opportunity to present additional evidence at a hearing following remand before we make a final decision regarding the merits of the appeal. No one is guaranteed finality following any trial. The rules regarding burden of proof are meaningless and there is no end to the possible mischief a result-oriented supreme court could accomplish by this procedure.
Finally, § 46-14-302(6)(c), MCA, provides that the court discharge or release the committed person “on conditions that the court determine [s] to be necessary or must be recommitted to the custody of the director of ¡the department of public health and human services.” In other words, if the District Court determined that the State had not proven by clear and convincing evidence that the committed person presents a substantial risk of serious bodily injury or death to himself or others, but had concerns about his adjustment to society, the District Court could have imposed conditions to the release, requiring that Woods be monitored, treated, or supervised to assure the public that further problems will not occur.
For these reasons, I conclude that the State failed to meet its burden at the original hearing held on February 17, 1995. The District Court was clearly erroneous when it found otherwise. The majority erred by remanding this case to the District Court to give the State a second opportunity to prove what it had not proven at the original hearing, and the majority’s prior decision that the State had failed to meet its burden of proof is the law of this case. There is no precedent nor procedural authority for remanding for additional evidence and for entering a contrary decision based on that additional evidence.
I dissent from the majority opinion.
JUSTICES HUNT and REGNIER join in the foregoing dissenting opinion.